Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 1st Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-8-0672, People v. Brandon-Jackson. Hey, good afternoon, everybody. I'm Justice Walker, and I have with me today Justice Hyman and Justice Cochran serving on the panel, and I'd like to have you all to introduce yourselves, please. My name is Debra Pugh of the Office of the State Appellate Defender, and I represent the appellant, Brandon-Jackson. Good afternoon, Matthew Connors, on behalf of the people of the state of Illinois. Thank you, as well. And Ms. Pugh, I'll start with you. How much time do you need, Ms. Pugh? I haven't argued on Zoom before this panel before, and so I would suspect around 15 minutes with some time for rebuttal. Sure. That's fine. We're actually allotting 20, but if you only need 15. Oh, okay. Oh, no, then I'll take 20, then. Okay, so you want 15 to argue and 5 for rebuttal? Yes. I mean, let's see how it goes. But yes, that's what I'm requesting. Total of 20. Okay. And Mr. Connor, what about you?  Okay. You're going to take a total of 20 to argue? Yes, Your Honor. No rebuttal for me. All right, that's fine. And if you do run out of time because the justices are asking questions and you have a really pressing point that you really wanted to get into us and we didn't allow you to get that in, we will give you a few extra seconds to get that point. Thank you, Your Honor. Thank you. You're welcome. So we'll start with you, Ms. Pugh. Okay. As I say, my name is Deborah Pugh of the State Appellate Defender, and I represent the appellant Brandon Jackson. Now, I plan to discuss both arguments involving jury polling and the sentencing, but as far as the sentencing issue goes, unless Your Honors have questions, I plan to focus that argument on the improper sentencing factor and not the second issue. But I'm happy to talk about both. Now, as for the issue that one of the jurors was not pulled following the return of the verdict, the Illinois Supreme Court has made clear that the very purpose of jury polling is to allow jurors to express disagreement during the poll because, quote, otherwise the polling process would be a farce and the jurors be bound by the signatures on the verdict, unquote. The Illinois Supreme Court did not want the jurors to be bound by the signatures on the verdict. In Kellogg, the court talks not just about hearing the response from the jurors, but also seeing their demeanor, listening to their tone of voice to determine their present intent, not the intent that they had when they signed the verdict form, but their present intent when they're being polled. Are there any cases that have held that less than 12 is wrong? I could not find a case that was exactly on point regarding where a juror was skipped over like this. But looking at what the Illinois Supreme Court said... Well, whatever cases are out there, the cases that are out there, even if some of the issues might be a little different, but all the cases that are out there that we are aware of, too, have gone the other way, isn't that correct? Well, I'm aware of some unpublished cases that have gone the other way, yes. But if I may, I would say that those cases have been decided incorrectly because of the way they haven't... Everything has been kind of focused on McGee, and the state focused their argument also on McGee. But the state admits that the juror wasn't polled, and so it goes straight to the issue of what kind of an error is this? Is this a second pronged claim error that can result in reversal? Now, McGee said no. McGee said it was not plain error, but there are a couple of points about that. First, McGee was decided in 2012, back before the Illinois Supreme Court had made clear that errors other than structural error could be considered second pronged plain error. So McGee found first... Yeah, I just agree with you there. I think that's been the law in the state of Illinois for a long, long time, and I don't think that that Supreme Court case can be cited for that position. Could be cited for which Supreme Court case? Kellogg could not be? The Supreme Court has always acknowledged that errors other than structural error can be considered plain error. Yeah. Oh, yes. I agree with that, but McGee was looking at structural error. I mean, McGee said that only structural errors can be second pronged. McGee was sort of... There was a brief period of time before Clark was decided in 2016 where there was some confusion among the appellate courts. But yes, I agree with you that the Illinois Supreme Court has always held that. What cases has... What appellate court has ever held that? Oh, I could... I mean, if you'd like me to do a supplemental brief on that, there were a number of cases. There was around... The time was around 2014, 2015. There was a lot of confusion. There were cases that would make that... I can't think of them off the top of my head, but there were a number of cases. That was one of the issues in Clark. And because there was some concern in Clark, I think that the appellate court had found that only structural errors could be found as second pronged plain error. Is it your argument that the failure to pull, in this case, one juror standing alone without any other evidence that there was anything other than a unanimous verdict, that that's a plain error? That is my argument that it is second pronged plain error. Because, for instance, if you compare this case to Kellogg. In Kellogg, one juror expressed ambivalence. In this case, we don't even know whether a situation like Kellogg would have occurred because not every juror was given the chance to unbind themselves from the verdict. Well, you don't know because nobody brought it to the court's attention. That's correct. But there are other issues at play in this case, which is... One of the things is that this was not, for the jurors, an easy case. They deliberated for hours, so long that at some point the parties talked about sequestering them. Okay, let me at least stop you right there. How long was this trial? The trial, there was, Vardir was one day. The trial was three days, closing arguments and deliberations. No, the trial was more than three days. Start to finish, it was six days. It was five days, start to finish. How many, I disagree with that, but how many, you might be right, maybe I did the math wrong, but I don't think so. But even, I'll give you five. Five days of trial. How many witnesses were there? Oh, there were a number of witnesses. There were probably 15 witnesses. And how long was the deliberation? The deliberation was, the deliberation started at noon, and it was unclear. The court didn't say on the record exactly... It started at one and it ended. The verdict had been returned by nine. So you think that with a trial that long, that a deliberation of seven hours is some kind of a problem, an indication that the jury is... No, not in... ...deliberate that long? Not in and of itself, but there were other things. For instance, the fact that the jury sent several notes, and one of the notes happening later on in the afternoon was a note where the jury asked whether they could have access to another room where they could stretch their legs and also get a minute away, unquote, unquote, get a minute away. I disagree with that. But to me, that also indicates that there was some, at least one juror wanted to get away from whatever was happening in the jury room. No, it indicates they want to stretch their legs after sitting in a room for eight hours. But again, this is all speculation because we don't know what that juror would have said. No, but I'm asking you. You said that there is indication, other than the fact that one juror wasn't called, that there's a problem with the unanimity of the jury. What is it? Well, it's simply the fact that how long the jury deliberated for the note, especially about the wanting a minute away, and then also once they did indicate to the court that the jury, that they had reached a verdict, the jurors then took... There was some confusion about the actual signing of the forms. The jurors didn't sign the forms. Yeah, and you said to the record, but I don't see where that is reflected in the record. In the record, it was confusing what happened in the record. It was very, it was not clear what the judge said, that the jury said that there was a verdict, and then it was then the verdict forms weren't, they said it just wasn't done in a standard way. It was unclear to me what exactly happened. No, it's not in the record. I believe it is. I mean, the whatever, I can check the record right now, but I don't actually have the record with me, but I can check my citations and my notes. Well, I checked your citation, and that is not in the record. Okay, that's, I will, if you'd like, I can also do supplemental briefing on that. There's some reference to the fact that the court was not in possession of the jury verdicts during this conversation, but there's, you're reading into it, there's, they were probably in the room with the jurors. It was unclear to me what it was. There's nothing in the record, is my point, to suggest that there was any problem at all with this trial. Is there ever a question about, we're deadlocked, judge, what do we do, we can't reach a verdict? There was nothing of that nature. No, there was nothing like that. But all of this, by not pulling the juror, having one juror not pulled places the onus on that particular juror. If she did disagree to raise her hand, everybody was desperate to go home at that point. They'd all been there for days, and so it's placing the onus of guaranteeing the unanimous jury on one particular juror. What about the onus on somebody to bring it to the court's attention so that the whole issue could be resolved in five minutes? Oh, I mean, I would have said that's what counsel should have done. I mean, counsel, of course, should have done it. I didn't raise it as ineffective assistance of counsel because that would have involved speculation as to what the juror would have actually said. And I don't think it's appropriate to be speculating. You're speculating about all this other stuff. Well, it's not speculation. It's simply saying we have a black box. We don't know what happened in the jury room, and we don't know what this particular juror would have said. The Illinois Supreme Court says that it's essential for the jury to be able to unbind themselves from. Right. You do know that there is absolutely not one shred of anything at all in this record that would tend to suggest that this was not a unanimous verdict, other than the obvious where one juror wasn't pulled. I mean, the length of the deliberation combined with the wanting to get away. They wanted to stretch their legs. They wanted to get a minute away. They wanted to get away to the adjacent jury room to stretch their legs. That could be, but again, we don't know. Again, we don't know. I'm trying to avoid speculation. We don't know. We don't know whether the juror would have. That's exactly what you're doing. No. What I'm saying is I don't know the jury didn't have the opportunity to say what she would have said and I don't know whether she would have said yes and I don't know. Focusing on what we do know the record, as I think we're bound to do. Is there any shred of anything that would tend to suggest that this was not a unanimous verdict. No, there was nothing there was nothing that was said during the jury polling or the other point that indicated that it wasn't unanimous, but in Kellogg there also wouldn't have been anything that indicated it wasn't unanimous except for the jury polling, just like in Kellogg, the jury. The state didn't raise the fact that nobody objected. Right, that's correct. It wasn't it wasn't raised and it wasn't. It doesn't address that at the end of the opinion, right, right, that's true but there have been other cases that have also found that errors regarding jury polling are plain error, or that that the right to pull a jury is a substantial. You can never a situation like this with the only problem in the trial was the failure to pull one or two jurors, there's not that says that. No, I cannot find any case all that says that, but the case all that says that it's not plain error, they rely on glassburn Thompson which are unrelated cases involving rule for 31 that have to do with the questioning of the jerk in the veneer for the fourth with the with their questions, as opposed to what's happening at the other end. And in those cases, the relying on the McGee said that this is just a common law rule about jury polling and that there are other means of protecting the right to unanimous jury, for instance, the right to the for instance requirement that the verdict form be signed by all the jurors, but in Kellogg the jury form was signed the verdict form was signed by all the jurors, and there was still indication of ambivalence. And that was why Kellogg focus on the need for the for the judge to be able to hear if the defendant asked for it to be able to hear their, their tone and see their demeanor and see whether they actually agreed, and here that just did not occur. And so there's no reason to assume that it would be that she would have said yes or that she would have said no what we have is a black box we have, unlike in the Thompson and glass for where the jurors are being asked questions, and maybe they weren't asked the fourth of the one questions, but the court had the opportunity to see their demeanor, the parties had the opportunity to strike jurors here all we have is what happened in the jury room. What's on the verdict and then we don't have this one jurors answer of how she would have responded had she been pulled. And so for those reasons, there's the there are all these other cases that say that it is a substantial right to have the jury pulled. There's nothing that's exactly on point except for sharp and McGee but again those cases involve structural error and look not to Kellogg there's a there's, there's a relevant Illinois Supreme Court case on this issue but instead of looking to Kellogg those cases looked to the unrelated to cases of Thompson and glass for. There are no cases that are saying that this is not a second prong plane error that to skip over one of the jurors in the jury point to ensure the dependence right to unanimous verdict. You say that it could be playing here it just wasn't playing here on the facts of that case, it did because in that case though I mean, as I say this in this case this is different from McGee because it was a longer deliberation there was a notes from the jury, and we just don't know and so but had there but had there been something from the jury, but one of the notes was can we have an exhibit list. And the other note was what's reasonable doubt that has nothing to do with, you know, unanimous verdicts right. Well, I'm reasonable doubt, given that that's what the jurors meant to decide it does have to do with coming to a unanimous verdict, but is it uncommon for jurors to question the court about being deadlocked or an inability to come to a decision that's no that that does happen occasionally. But, but, but you're, but you're, I'm sorry. Occasionally, that only happens occasionally. Well it's in the cases that I read it happens that it's certainly not an unheard of for the jury to say that they're deadlocked I haven't read that many cases that are involved in a deadlocked jury but it does happen, be more in tune with the argument you're trying to make if you would have those kind of questions. Well, if there had been question if there had been questions or if somebody had spoken up at the jury polling and said that there. Yes, if there had been a question about a deadlocked jury then I think that this would be more of an open and shut case and certainly if there had been a jury, a juror who had said oh this one juror she didn't agree with that she didn't agree with the verdict, then we would have a very different issue before us it wouldn't be an issue of second prong plane error that would be an issue of this jury was not unanimous there would have been. We're going with what we have in the record. And if there were more in the record, it would be a different argument, because now we're just going with we're trying to avoid speculation and saying, we don't know what this one juror would have said, and there and so therefore we don't know for sure whether she would have unbound herself from from the from what she signed, while she was still in the jury room. And so here there was the one juror wasn't wasn't. You stated that there is other evidence or use word evidence or information that would support your argument that the verdict was not unanimous. And I'm asking you to cite that information. I know you said that, but then just as I'm going to ask you another question you said no there wasn't anything and I'm just trying to be clear if there is. I guess I don't want to say that there was evidence that it wasn't unanimous, there was there was evidence that there was something going on in the jury room where the jurors wanted to get away whether it was an issue of just we've all been in the same room for so long, I would need to get out, but there was a question there was a statement, we need to get a minute away, which suggests that at least one person wanted to get away from the other jurors wanted to get away from the deliberations, I don't Okay, now the issue for this court is whether the trial was fundamentally unfair or the verdict was fundamentally unfair or the verdict is unreliable in some way. And I guess I'm asking the same question again a different way is whether or not there's anything else, other than the court, failing to pull this one juror, that would lead this court to the position that the jury verdict is unreliable. That is, that is basic that that on top of the note is essentially it, but if one were to consider if the jury had not been if the jury if the defense counsel. To the note simply asking that that reasonable that guilt beyond a reasonable doubt be defined is that what you're referring to That plus the note about getting away. I mean, there's nothing. I mean, I freely admit that there's nothing here that's that I could point to If there were something that I could point to to say, oh, this juror this verdict was definitely not unanimous. I'd be making a different kind of argument here. I'm just going with what we have in the record. And, and also if none of the jurors had been pulled clearly there would be second prong plane error because they would have they would have It would certainly have a substantial right to have to have those jurors pulled. So then it's a question of drawing the line. So it's okay to have one juror not pulled And if it's okay to have two jurors not pulled. Is it okay to have three jurors not hold at what point is the line drawn that a defendant no longer has the right to have the jury pulled or it's no longer considered a substantial error. And so by saying that one, it's okay to not have one jury. So we're drawing a line there. And it's just a question of whether or not this court wants to start drawing lines like that saying some number of jurors have to be pulled, but we don't know how many And so in this case, we just have the one, you know, there was just the one juror and we just simply don't know what she was going to say whether she would have been like the juror in Kellogg and been ambivalent made an unclear made an unclear answer or whether she would have said, you know what, outside of the jury room. I don't want to or I don't want to find that he that he personally discharged the weapon. We just don't know what she would have said. And so for all those reasons, I think it's I think I should be moving on to the second issue, but we would ask that this court would find that this was second pronged plain error because the cases that have found that it wasn't second pronged plain error were focused on the wrong kind of cases and not on Kellogg, and they also found that they needed it to be structural error. Now as to the sentencing issues, it's well established that personal traits of victims are not relevant to the question of how proper sentence. The US Supreme Court said in Payne v Tennessee, the Illinois Supreme Court said it in Walker and the appellate courts have said it in Mauricio and Joe, but that's just what the court did here. It considered the personal traits of the victim to be aggravating evidence when sentencing Brandon. The judge in fact said it was her job to balance what she had heard about the life of Mr. Estrada against what she'd heard about Brandon's life. And that's what she did in determining the sentence, she contrasted Mr. Estrada against Brandon. She talked about Mr. Estrada's indisputably fine character, his service to his country, to his community, to his family, the respected role that he held in his family before pivoting to the ways in which Brandon had disappointed his family. Now the state can't find any cases that hold that it is appropriate to use the victim's personal traits as aggravating evidence. Because there are none. Instead, the state just says that when saying that she had to balance the evidence, what she meant was that she had to balance the aggravating evidence against the mitigating evidence. But that's the problem is that she considered Mr. Estrada's personal traits to be aggravating evidence. This case is very much like Peabody-Mauricio, which is exactly on point. So like here, the judge in that case talked about how the victim was a veteran and a family man and valuable to society. And the appellate court there found that the trial court had implied that it was using the personal traits of the victim as aggravating evidence. Now here she did more than imply it, she said it was her job to balance these two lives against each other. Now the state complains that this issue is about the admission of victim impact statements, but that's not it at all. The victim impact statements were clearly allowed. There's no question of that. The issue is that the victim impact statements are there to discuss the impact of the crime on the victim and on the victim's family, not to be in the state, whereas the court was using the defendant's, the victim's traits as aggravating evidence. All of those traits, by the way, were perfectly clear from the record and you didn't even need the victim impact statements to see Mr. Estrada's fine character. This was a man throwing a Christmas party at a VFW for his family because he was going to be working as a sheriff's deputy on Christmas. No one's going to say anything. I mean, this man was a fine man and a loss to the community, but that's not aggravating evidence against Brandon. Now the state also says that this issue wasn't preserved, but the Illinois Supreme Court has made clear that an improper sentencing factor is second-pronged plain error under Martin from 1988. And even if this court finds that it wasn't second-pronged plain error, Valedovinos says that in a case like this where something wasn't preserved perfectly in the post-sentencing motion, that it's still sufficiently preserved. So for these reasons, if this court does not reverse Brandon's, Brandon's conviction for a new trial based on the first issue, we would ask him, we would ask this court to reverse for a new sentencing based on this issue and also based on the second issue regarding the adding of the five more years. If this court has no further questions. Thank you. Thank you, Ms. Pugh. Mr. Connors. Good afternoon, and may it please the court. Again, Matthew Connors on behalf of the people of the state of Illinois. Defendant has raised two primary issues here before the court. First issue, of course, already drawn upon, which is what is the relevance of having one juror not pulled after the jury was returned a verdict of guilty? Most recent case on this was authored by the first district in people versus sharp. And in that case, two jurors were inadvertently skipped. And that appears to be exactly what happened here. And this court looked at the record and said, there wasn't that case had a whole different. There was they had to do with attorney. With the attorney being incompetent. Not with regard to plain air. Nothing to do with plain air. To the extent, Your Honor, that the court, the people are relying upon sharp. It was done in the guise of an ineffective claim. But the language that this court relied upon. And if I can make a quote from this court's decision said, and I quote. Yes, Your Honor. What page are you reading from? I am reading. 2015 at first 130438 at, and I believe that is at page. A paragraph. I'm sorry. I put that in the people's brief at page. Sorry, Your Honor, wrong tab. That was on page. I think it's paragraph 112.  The record shows unanimous verdict. No juror objected when the verdict was announced. The two unquestioned jurors were present during the polling and did not voice an objection. The 10 poll jurors answers do not indicate that there was any dissent from the other two jurors, and the two jury firms were signed by all 12 jurors. In this case, all of those facts which this court consider are still present. The exact same logic. But that wasn't the issue in that case, you know, you got to look at what the issue is just because the facts help you, you know, in comparison to this case, that wasn't what the court was deciding. So I don't see that is even relevant. We have a whole different issue here. Right. I mean, they didn't talk about playing Aaron shirt. So, well, no, the case says that it doesn't fall within the point here. Yes, it's pretty quick. Let's dig that. And that is not what that case was about. I mean, that wasn't part of the decision. The court did specifically say plenary did not apply your honor. Right. So, to the extent that that point has been made and defense counsel has admitted that sharp actually held that proposition of law has attempted to distinguish it. So, to the extent that there is a discussion about the propriety of sharp. All of the parties agree that this issue was presented in that case, and more important case though is McGee. Yes, McGee was the first case, again from the first district, which really fleshed out the area and tied it into the concept of what are we actually talking about because Kellogg isn't really a good analogy in this case, because in Kellogg you had an affirmative declaration on the record of a juror who attempted to step back from her assigned jury verdict. And the circuit court in that case, basically road roughshod and that's what the issue was before the Illinois Supreme Court, they said that the circuit court did not allow that juror to have the opportunity to explain the hesitation, when that jury was pulled. And that's the distinction between this case, and I think what Justice Cogman was talking about about speculation, Kellogg is expressly reliant upon that declaration of and hesitancy or hesitancy of an ambiguous response. We don't have that here. We have a look at what the Supreme Court said and Kellogg about the importance of polling. And the opportunity for free expression unhampered by the fears of errors, and so forth. I mean, the court finds polling to be a right. And this, this case, the polling wasn't complete. Correct, Your Honor, the people can see that there is an entire line of cases that defendant has cited the Wheat v. Benedetto cases, where a circuit court affirmatively rejects a defendant's request to have a jury polled. And they have said in those cases, that error in and of itself is of such magnitude because you promptly disregarded the opportunity and the expressed desire on the record. But that's not what we have here. Where the trial judge decides to just take a sampling of the jury rather than polling the entire jury. How does that change things for you? So, and I realize this is a hypothetical, but I think Ms. Pugh raises this argument that what if they decide that we're going to only do seven, we're going to see where the seven comes out and we're done with this polling thing. Is that sufficient or, or if they only, if they poll 11, 10, 9, where does the continuum stop? Right now we can conclusively say based upon the evidence that the failure to poll is error in and of itself. We can also say that based upon McGee, 10 of 12 is permissible. Because the McGee court specifically found that where two jurors were inadvertently not polled, that did not rise to the level of plain error. So, based upon that... Isn't it more a question of why it happened as opposed to the number of jurors that weren't polled? For example, if it's an inadvertent error, isn't that different from, you know, a judge completely, you know, not following up if a juror, for example, indicates a problem with unanimity? Yes, people can see that that would be something that would be worth investigating. And if we had a decision, a discussion like Justice Walker just pointed out, if all of the parties agreed to, let's say, seven of 12, I would assume the defense counsel would come back with an ineffective claim saying you waived my right to have five of the 12 jurors poll. We don't know under those facts how the issue would be presented. But based upon the current state of law, it's the people's position that we know this question has already been answered by the first district twice in published decisions. And on both of those occasions has determined the second-pronged plain error is not available. And I know, Justice Coughlin, you discussed the timing of the case and how long the jury was out in discussion about vis-a-vis questions that the juror had. In my review of the record, the juror went out at 1221, and on the common law record, it appears the jury returned back with a verdict at 615. It's not sure if it's 605 or 615 based upon the handwritten note. Defense counsel was correct to note that the circuit court did not put on the record orally that the jury came back at 615, but that's what the common law record indicates. So we have a jury that was... I thought it was nine, but if it's 615, that's just further... The nine o'clock was mentioned as the time they would have the discussion about releasing the jury. But again, only the reference in the common law record establishes the time that the jury came back, and that would have been at 615. What I was getting at, is there any other evidence in the record that this was not a unanimous verdict? For example, the court I know, in a court's comments to the jury, on at least three occasions, told them that they were required to come up with a unanimous verdict. There's absolutely nothing in the record, and that's what makes this case different than Kellogg. Because Kellogg, you have an affirmative declaration of a juror's hesitancy or her willing to step back from jury work. We don't have that. We have a silent record where all of the other information does specifically state this was a unanimous verdict. We have three sign-varied firms. We have no expression of surprise, no expression of anything when the jurors were polled. And to the extent the defense counsel says there should be an onus put on the silent juror, so to speak, that's what this court has held previously. It says we look at the record to determine what other evidence there is to validate a claim that there may have been some sort of confusion or some sort of hesitancy. That's simply not borne out in this case. And it's for that reason that cases like McGee, cases like Sharp, are controlling. And it illustrates why, under these facts, defense counsel's argument that second-round plein air is applicable just isn't persuasive. Would you agree that polling a jury is a basic right in Illinois? The Supreme Court has said that it is a fundamental right in those cases where the jury has not been polled. But I think it's saying polling is a fundamental right. Yes, they have used that term in those cases. And I think it's relevant to look at that. Because for the purpose of saying that, you have an error. Justice Walker, did you have a comment? I did. I just saw your hand. I'm sorry. In those cases, you had an error that was made because the entire act did not occur. So the court has to speak about the act that was omitted. And it makes sense. You're not talking in the abstract. You're talking about an affirmative act where the circuit court failed to engage in the poll. So that is going to be the language that the court used. But most recently, in the case — I mean, the court is making a general statement about how polling is a basic right in Illinois. Period. I don't understand how you can say, well, it's only in that case because there's no polling. That is a basic right in Illinois. Do you agree or disagree with that? Yes, Your Honor. That's what the court has said. So if it's a basic right, then why does this defendant not have the right to have a complete polling? Because as this court said in McGee, the term basic and fundamentals gets used in different contexts. And in McGee, they talked about the right to have unanimous verdict is the right that is the most unassailable right. That has to be pristine. Now, how do we normally accomplish that? We do that by a signed verdict form. However, we also have an alternate way for a party to say, I would like to have that jury verdict form tested. And we do so by engaging in the jury poll. However, in McGee, they talked about the distinction between what happens with the poll versus what happens with unanimous verdict. Because just because the jury was not polled does not necessarily yield result that the verdict was anything less than unanimous. So that's why the court engaged in the discussion of 431B and Zare because they talked about a defendant has a fundamental right to have a jury that is unbiased in considering his case. All the parties would agree with that. This court and the Supreme Court have not held that in and of itself, an error in jury admonitions renders that right a nullity. And they look at the context of what that error is. So there are two distinct and competing interests, and that's what the McGee court recognized. You have a fundamental right to ensure that you have a unanimous verdict. You have a right to poll the jury. The right to poll the jury does not in any way establish that that verdict was not unanimous unless there is something on the record to give the court of review reason to believe that a juror was recalcitrant or willing to withdraw that decision. We don't have that here. We had it in Kellogg. And that's where the error came in, because the circuit court basically bullied the juror in that case and said, is that your verdict? What was it? Was it? And did not allow the juror the opportunity to explain itself. That's what renders this case different than Kellogg. Defendant is relying upon a silent record and drawing a negative inference from that silent record. And it's the people's proposition that this court's previous decisions say that there has to be more than silence. There has to be an affirmative declaration of something on the record. And if there was something in this case, counsel has already indication would have brought that to the court. But we don't have that. We have approximately six hours of jury deliberations. We have one note that counsel has repeatedly talked about requesting for definition for a reasonable doubt, which has this court seen plenty of cases where jurors to come back with that question. I would also note for the record that there was a pretrial motion limiting filed by the defendant, precluding the people from offering such a discussion. That being said, there's simply nothing in the record to put forth a proposition that there was anything other than unanimity. And based upon this record, the people submit that defendant has failed to establish plan here. If there are no further questions on that, that people would move to the second argument, which is whether or not the circuit court comments. Yes. With regard to Thompson and Glasper. Yes. Miss Pugh Pugh said that they are relevant to this case. Do you agree with that. No, the people would not say that Thompson and Glasper are not relevant because they tie to the very essence of how courts engage in this competing interests, as the people just highlighted Thompson and Glasper talked about not just structural air, but how do we determine what the air at issue is the air at issue. If it's a 431 be air isn't just is the admonition wrong. It is, does it somehow taint the composition of the veneer. That is completely valid consideration when in this case, defense counsel's argument is the failure to pull necessarily tainted the outcome of this case. Okay, thank you. Yes, your finish up and get a couple minutes left. Yes, Your Honor. Quickly with regards to the second the sentencing issue it's the people's proposition that the relevance of the victim impact statements was to establish who the victim was and the harm that they suffered. There is nothing in and of itself that is incorrect about a victim testifying about the characteristics about the deceased. The problem is cited in Murkazio and those cases is when that is used to aggregate the offense. In this case, the circuit court said, I am balancing all of the evidence that hurt the circuit court had for victim impact statements from the defense 38 page mitigation statement, believe it was eight statements of aggravation and arguments on behalf of all the parties. All of that information is what the circuit court had to consider in fashioning a sentence. This is not a case where the circuit court came out and said, I am sentencing this defendant to a longer sentence because the victim was a veteran. The people would would submit that that in and of itself would be error based upon Murkazio in those cases. If the circuit court statement leads to a proposition that a defendant is entitled to a greater penalty, because the victim was more sympathetic. That is error, but the circuit, but the appellate court has previously held I said in the people's brief that a circuit court doesn't consider this case in a vacuum it considers all the other cases before it. And that's what the circuit court did the circuit court said this defendant isn't like all the defendants who came in with nothing that they had for this isn't like all of these other cases, the circuit court was trying to weigh out what was a very lengthy post sentencing process. And did so by saying, here's all the evidence. Here's how I'm going to fashion sentence defendant has to establish which of the statements is an error. If the circuit court says The victim was a fine upstanding member of society. Is that error in and of itself. Well, no, it's something that somebody would have said about the victim. If the circuit court said he's a fine upstanding member of society. And for that reason, I am giving him a 75 year sentence as was done in the Murkazio case, then the Murkazio case, excuse me. Then the people would say it falls squarely within that. But in this record, we don't have that link. We have two discrete thoughts we had what the evidence and aggravation, the victim impact statements included and what was elicited in mitigation and the circuit court balanced all of those factors. So if there are no further questions, for all those reasons, those stated in the people's brief people ask this court to affirm defendants convictions and sentence. Thank you. Thank you, Mr. Connors. I'll try to be quick. The state agrees that the right to be pulled the fundamental right. However, the state seems to be arguing that the fundamental right is to only have 10 jurors pulled because it's okay if only 10 jurors are pulled. And the state says that maybe if only seven jurors were pulled, he could raise it as ineffective assistance of counsel, but that's a speculation. Because in order to raise an effective assistance of counsel, you have to prove how the defendant was prejudiced by that. But the problem then is that as here, it's a black box. You don't know what the jurors would have said. The state's trying to get around the idea of saying no, this really is a fundamental right. And if that fundamental right is not met, then it's second pronged plain error. It can be an effective assistance of counsel because that's just speculation. So if there's an error here, this is what the error is second pronged plain error. Now, as to the issue of the judge's intent, whether the judge intentionally prevented the defendant from exercising his fundamental right to have the jury pulled, or whether that was an accident, what the judge's intent was doesn't affect the result, which is that the jury wasn't pulled. And whether it was one juror who wasn't pulled, or 12 jurors, or six or seven, wherever we want to draw the line, the jury wasn't pulled. And it doesn't really matter whether the judge did it intentionally or not. So for these reasons, I would say that it is second pronged plain error because there's nothing else it can be. If the fundamental right isn't met, that's what it can be. It can't be anything else. And now as to this quickly as to the second issue, the state says that the judge said that she just needed to balance the evidence that she heard. Let me just read what the judge said again. That what is the right sentence here for everybody, meaning not just the defendant, but for everybody. That is my job to determine, to try to balance what I've heard about the defendant, his upbringing, his experiences in life, and his choices that he made to the life of Mr. Estrada, who served his country. And then she goes on to talk about how he served his country and his community before talking about Brandon. She was doing exactly what happened in Mauricio, but to a much greater degree, I would urge your honors to read the facts of Mauricio and see this is Mauricio was just a sentence or two. This was paragraphs talking about it, and it was far more than just referencing what was said in the victim impact statements and the fact that the loss of this man, of course, had an impact on this family. Of course, it did, but talking about his, he wasn't shot because he was a sheriff's deputy. The shooter had no idea who he was. There was nothing about that. That was not part of the crime at all, but the judge in fashioning the sentence focused so much on his indisputably fine characteristics that it led to a greater sentence for Brandon. And she said so on the record saying that it was her job to balance the two lives against each other. So for that reason, if this court does not remand for a new trial, we would ask that this court would remand for a new sentencing hearing in which the victim's characteristics are not considered to be aggravating evidence. If this court has no further questions, thank you. Thank you, Ms. Pugh. Thank you, Mr. Connish. You both have done an excellent job and we appreciate that. With that, this hearing is adjourned. Thank you.